Luis G. Cestero y Cooperativa Azucarera Los Caños, peticionarios, *v.* Junta Azucarera de Puerto Rico, demandada. Autoridad de Tierras de Puerto Rico, recurrente, *v.* Junta Azucarera de Puerto Rico, recurrida.

Números: 32, 36. Resueltos: 12 de abril de 1962.

148

*Félix Ochoteco, Jr.,* abogado de los peticionarios; *Alejandro Romanace,* abogado de la Junta Azucarera de Puerto Rico; *Antonio Riera, Ramón Gandía Biscombe, Félix Bello* y *Osvaldo de la Luz Vélez,* abogados de la Autoridad de Tierras de Puerto Rico.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Blanco Lugo.

SENTENCIA

En 27 de octubre de 1955, mediante escritura pública otorgada ante el Notario Antonio Riera, don Franco Hernández Vargas y la Autoridad de Tierras de Puerto Rico otorgaron un contrato de refacción agrícola y molienda de cañas que fue debidamente anotado ocho días después en el Registro de Contratos Agrícolas de Arecibo. En virtud de dicho contrato la Autoridad de Tierras concedió al agri-

cultor un préstamo refaccionario hasta la suma de $67,000 para la cosecha del año 1956 y de $55,000 para cada una de las cosechas de los tres años siguientes. Específicamente se expresó que el propósito de la deuda al concertar el préstamo refaccionario era "llevar a cabo las actividades agrícolas y poder efectuar otros gastos que son necesarios para el cultivo de caña de azúcar" en varias fincas del deudor y en otras que poseía como arrendatario. En la parte dispositiva del contrato el refaccionado se obligó a invertir el importe del préstamo "en el cultivo, desarrollo, preparación y administración de las plantaciones de caña . . . *y el corte y arrimo* . . . hasta la factoría propiedad de la Autoridad conocida como Central Cambalache", la cual se obligó a su vez a moler y convertir en azúcar las cañas enviadas por el colono. La acreedora refaccionaria se reservó el derecho de reducir el importe del préstamo y descontinuar los anticipos refaccionarios cuando a su juicio tal medida fuere necesaria para la protección de sus intereses, y asimismo, conservó la facultad de *"aumentar el préstamo convenido para cubrir cualesquiera otros gastos adicionales que fueren necesarios en relación a las referidas plantaciones de caña."* Otras disposiciones del contrato que es necesario considerar a los fines de resolver la controversia planteada son las siguientes, que por su importancia transcribiremos literalmente:

"(*f*) Se conviene además, que si por cualquier motivo debido al cultivo, siembra, mejoramiento, sostenimiento, administración, *corte y arrimo* de las cañas objeto del presente contrato, llegase a ser necesaria la entrega por 'La Autoridad' a 'El Deudor' de alguna suma o sumas en exceso del crédito refaccionario aquí concedido, el pago y devolución de tales cantidades adicionales, quedará garantizado en las mismas plantaciones de cañas en la forma y manera convenidas en el presente documento en cuanto a la suma o sumas que se recibieren por 'El Deudor' a cuenta del presente préstamo refaccionario, hasta la suma de DOS MIL NOVECIENTOS DOLARES ($2,900.00).

"(*f*) Es entendido y estipulado, que si el producto de los azúcares pertenecientes a 'El Deudor', del cosecho indicado en la

Cláusula SEGUNDA de esta escritura *no alcanzare a cubrir* la suma o las sumas que hubiere tomado 'El Deudor' bajo este contrato, con sus intereses, *así como cualquiera otras deudas que bajo este contrato surgieren a favor de 'La Autoridad', entonces se entenderán también expresamente gravadas y afectadas todas las plantaciones de cañas dulces que se siembren o produzcan en 'Los Bienes' descritos en la Cláusula* QUINTA *de esta escritura,* así como todos los azúcares y mieles que se produzcan de dichas cañas, en cualquier forma, durante la siguiente zafra de mil novecientos sesenta (1960) y durante todas las zafras y cosechas subsiguientes, hasta el pago total de este préstamo y sus intereses y cualesquiera otras deudas contraidas por 'El Deudor' bajo este contrato, garantizando dichas cañas, azúcares y mieles el pago del balance que resultare a favor de 'La Autoridad', hasta el pago total de este préstamo y sus intereses y otras deudas contraidas bajo el mismo, entendiéndose constituido expresamente dicho gravamen desde esta fecha, para que oportunamente surta todos sus efectos con arreglo a lo aquí acordado expresamente por las partes y con arreglo la Ley.

.    .    .    .    .    .    .    .

"(p) La omisión por parte de 'La Autoridad' de insistir en el estricto cumplimiento por 'El Deudor' de los términos, pactos, estipulaciones y condiciones de este contrato, o de cualquiera de ellos, o la omisión de ejercitar cualquier derecho concedido a 'La Autoridad' en este contrato para el caso de su incumplimiento por 'El Deudor', no se considerará ni se interpretará como una renuncia o abandono de los derechos de 'La Autoridad' a aprovecharse de tal incumplimiento, o a ejercitar sus derechos de acuerdo con los términos de este contrato." (Bastardillas nuestras.)

Al momento de otorgarse la escritura las partes incluyeron una aclaración al efecto de que el deudor refaccionado se reservaba el derecho de pagar en cualquier momento cualquier cantidad que adeudare a la Autoridad de Tierras bajo el contrato y desde ese momento los derechos y obligaciones engendrados por el mismo se considerarían extinguidos.

Para la zafra de 1956 la Autoridad de Tierras anticipó al colono Hernández Vargas un total de $70,987.66 para la

siembra, cultivo, acondicionamiento de las plantaciones de caña, y $20,677 para corte y arrimo.

Según el testimonio del señor Juan F. Billoch, jefe de la División de Intervención de Cuentas de la Autoridad de Tierras, las distintas liquidaciones de azúcar correspondientes al colono se aplicaban en primer término a cubrir los anticipos hechos al colono para corte y arrimo, según la práctica establecida en la industria, y luego se imputaban primeramente a los intereses, y cualquier balance resultante se abonaba a la deuda refaccionaria propiamente dicha. Según surge de la prueba documental ofrecida, el colono quedó adeudando la suma de $7,185.58 de la refacción para la cosecha del año 1956. Durante dicho año se le hicieron anticipos por $1,087.66 en exceso de la suma de $69,900 que se había convenido como límite del préstamo.

Para la cosecha del año 1957 se le adelantó al colono la suma de $59,734.74 para refacción, se pagó a la Central Monserrate una deuda que dicho agricultor tenía contraída por $11,584.84, por refacción para años anteriores, y se le adelantó la suma de $26,911 por corte y tiro. Las liquidaciones o cantidades recibidas a cuenta del colono se aplicaron en la misma forma que se ha explicado en relación con la cosecha del año 1956. Como resultado final podemos indicar que el colono quedó adeudando la suma de $17,351.39 de la refacción propiamente dicha, los $11,584.84 pagados a la Central Monserrate, $393.61 de intereses sobre la cantidad anticipada para refacción, $262.80 de intereses sobre la cantidad satisfecha a Central Monserrate, $162.78 de intereses sobre un pagaré hipotecario y la deuda refaccionaria de 1956. Para la cosecha del año 1957 se le concedió refacción en exceso por la suma de $1,834.74.

En diciembre de 1956 Hernández Vargas vendió a Luis G. Cestero tres de las fincas sujetas al contrato de refacción e igualmente le subarrendó otras dos cuyas plantaciones estaban igualmente afectas a dicho contrato. En la escri-

tura de compraventa así como en la de subarrendamiento se incluyó una cláusula que leía como sigue:

"Las tres referidas fincas, en unión a otras más, se hallan afectadas a un contrato de refacción agrícola a favor de la Autoridad de Tierras de Puerto Rico en garantía de dinero hasta la suma de SETENTA Y SIETE MIL DOLARES ($77,000.00) para cubrir la cosecha del año mil novecientos cincuenta y seis y hasta CINCUENTA Y CINCO MIL DOLARES ($55.000.00) durante cada una de las cosechas de mil novecientos cincuenta y siete, mil novecientos cincuenta y ocho y mil novecientos cincuenta y nueve, en unión a otras cantidades para cubrir anticipos, intereses, costas y gastos de operación."

Los vendedores se obligaron a gestionar y obtener la cancelación del contrato de refacción agrícola mencionado a los fines de que Cestero estuviera en libertad de moler las cañas a ser cosechadas por él en dichas tres fincas y las dos subarrendadas y a comenzar a moler las cañas en la factoría de la Cooperativa Los Caños.

1—En 16 de septiembre de 1957 Cestero acudió a la Junta Azucarera a solicitar se le autorizara a cambiar de la Central Cambalache a la Central Los Caños la molienda de las cañas producidas en las fincas sujetas al contrato refaccionario otorgado por Hernández Vargas. La Autoridad de Tierras se opuso a tales pretensiones y alegó que Hernández le adeudaba determinada cantidad por concepto de refacción. Después de la celebración de la vista correspondiente, la Junta dictó resolución en 2 de diciembre de 1957 en la cual, entre otras cosas, indicó que "se probó que el colono Luis G. Cestero tenía *conocimiento personal* de la *existencia* de la *deuda refaccionaria* contraída por el señor Franco Hernández Vargas con la Central Cambalache; que la Central Los Caños le dio refacción al colono Cestero para la zafra de 1958 y que Central Cambalache no le dio refacción al colono Cestero para la zafra de 1958." Resolvió además que del contrato de refacción quedaba un balance pendiente

de pago a favor de Central Cambalache y que, por tanto, Cestero no estaba en libertad de moler las cañas de azúcar producidas en las fincas adquiridas por compra y sub-arrendamiento de Hernández Vargas por hallarse dichas cañas gravadas por un contrato de refacción y molienda debidamente inscrito, otorgado por el dueño y arrendador anterior de dichas fincas y no haberse vencido el término del contrato ni extinguido la deuda mediante su pago en dinero o en especie. Específicamente se dispuso que Cestero estaba obligado a moler en la Central Cambalache las cañas pro-ducidas en las fincas mencionadas para la zafra de 1958, "hasta el pago total de la deuda refaccionaria contraída por el dueño y arrendatario anterior con Central Cambalache." Contra esta resolución se interpuso recurso de revisión por el colono Cestero y la Cooperativa Azucarera Los Caños, que lleva el número 32 de nuestro registro. ▄▄

Como la Junta Azucarera consideró establecido que se adeudaba a la Central Cambalache determinada cantidad en virtud del contrato de refacción agrícola otorgado por el dueño anterior de las fincas cedidas a Cestero procede con-firmar la resolución recurrida a la luz de lo resuelto en *South P. R. Sugar Co.* v. *Junta*, 82 D.P.R. 847 (1961), en donde dijimos que cuando el contrato entre la central y el colono es uno de refacción y molienda el colono tiene la obligación de moler sus cañas en la factoría de la central contratante durante los años especificados en el contrato independientemente de que en alguno de esos años hubiese pagado totalmente en cañas o en dinero los préstamos héchosle por la central hasta la fecha.[1] Con más razón esta doc-trina es aplicable cuando el colono aún adeuda cantidades por

---

[1] En el presente caso contractualmente se convino que si el colono pagaba cualquier balance que adeudara bajo el contrato cesaban las obliga-ciones contraídas. Es decir, que independientemente del término estipulado en el mismo, el colono podía solicitar cambio de molienda.

concepto de refacción y el contrato correspondiente fue debidamente inscrito en el Registro de Contratos Agrícolas. (²)

2—En 21 de octubre de 1958, cuando aún se encontraba pendiente ante nos el recurso número 32 para revisar la resolución de la Junta Azucarera dictada en 2 de diciembre de 1957, Cestero recurrió nuevamente a la Junta Azucarera y solicitó se le autorizara a cambiar la molienda del 25 por ciento de sus cañas a la factoría de la Central Los Caños para la zafra de 1959. Nuevamente la Autoridad se opuso a lo solicitado e invocó, entre otras cosas, que la cuestión planteada era objeto de una revisión judicial pendiente y que, de todas formas, aún se le adeudaba dinero por concepto del préstamo refaccionario. Específicamente se basó en el pronunciamiento de la resolución anterior en el cual se reconocía la existencia de una deuda que no había sido satisfecha totalmente para la fecha en que se radicó la nueva solicitud de cambio de molienda. La Junta Azucarera dictó resolución en 25 de junio de 1959 y ordenó a la Autoridad que se abstuviera de moler las cañas de Cestero para la zafra de 1960, y ordenó a la Autoridad de Tierras a pagarle al colono la suma de $11,162.47 que supuestamente había recibido en exceso de lo que se le adeudaba. Para ello consideró que los anticipos para corte y arrimo deben considerarse como parte del contrato de refacción y que, como Cestero solamente estaba obligado por los límites especificados en el contrato, de $69,900 en el año 1956 y $57,900 en el año 1957 y siguientes, resultaba que la Autoridad había recibido en exceso de Hernández Vargas la cantidad de $14,277.78.

Contra esta resolución recurrió la Autoridad de Tierras ante nos y la revisión de la misma es el objeto del recurso número 36.

(²) Aun cuando pudiera sostenerse que el recurso es académico por haber transcurrido la zafra de 1958, hemos preferido resolver la cuestión en sus méritos para adjudicar definitivamente la controversia, y evitar así cualquier reclamación ulterior por daños, según se apunta en la comparecencia de los recurrentes en el recurso 32.

No es necesario que discutamos la cuestión de cosa juzgada o asunto *sub júdice* que plantea la Autoridad recurrente ni la facultad que tenía la Junta para liquidar el contrato de refacción y fijar el importe de la deuda o crédito que finalmente resultaría. Presumiremos que estos errores no se cometieron. Sin embargo, considerada toda la prueba presentada, y especialmente la disposición contractual que grava todas las plantaciones de cañas dulces que se siembren o produzcan en las fincas para responder de las sumas que hubiese tomado el deudor refaccionado bajo el contrato, *"así como cualquiera otras deudas que bajo este contrato surgieren a favor de la Autoridad,"* y teniendo en mente que los anticipos para corte y arrimo no forman parte del préstamo refaccionario según admiten ambas partes, y que Cestero tenía conocimiento personal *de la deuda refaccionaria* [3] según resolvió la Junta en su resolución de 2 de diciembre, no podemos convenir en que se hicieron los anticipos en exceso representados por las cantidades adelantadas para corte y arrimo. Ahora bien, a los fines de la liquidación final de la deuda contraída por Hernández Vargas, y según la liquidación efectuada en 31 de diciembre de 1958, Cestero debe responder únicamente de las siguientes cantidades: (a) $7,185.58, balance de la deuda refaccionaria del año 1956; (b) $17,351.39, balance de la deuda refaccionaria del año 1957; y (c) intereses sobre dichas cantidades. No puede incluirse en la liquidación la cantidad satisfecha por la Autoridad a la Central Monserrate para satisfacer una deuda personal del colono Hernández Vargas, así como tampoco los intereses devengados sobre dicha suma. Siendo ello así, erró la Junta al ordenar a la Autoridad que se abstuviera de moler las cañas de Cestero ya que obviamente no se había satisfecho totalmente la deuda que motivó el contrato

---

[3] Es significativo que la Junta se refiera a que Cestero tenía conocimiento de la "deuda" refaccionaria y no se refiera a que tuviera conocimiento del contrato de. refacción.

de refacción y molienda de cañas otorgado por **Franco Her-nández Vargas.**

*Se confirma la resolución de la Junta Azucarera de 2 de diciembre de 1957 y se revoca la de 25 de junio de 1959. Se devuelve el caso para ulteriores procedimientos no inconsistentes con la presente sentencia.*

Así lo pronunció y manda el Tribunal y firma el señor Juez Presidente.

(Fdo.) LUIS NEGRÓN FERNÁNDEZ,
*Juez Presidente.*

Certifico:
(Fdo.) IGNACIO RIVERA,
*Secretario.*